UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____          │
│ DATE FILED: ___12/8/2022____     │
└─────────────────────────────────┘

BRYAN WHITLEY,

                              Plaintiff,

              -against-

THE CITY OF MOUNT VERNON,

                              Defendant.

20-cv-9011 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Bryan Whitley ("Plaintiff") previously filed this action against Defendant City of Mount Vernon ("Defendant") to recover unpaid wages, liquidated damages, and attorney's fees and costs under the Fair Labor Standards Act, 29 U.S.C. § 403.  The parties executed an undated settlement agreement (the "Settlement Agreement" (ECF Nos. 21-1 & 21-2)) and filed a joint motion for approval of that settlement agreement on December 27, 2021.  (ECF No. 22.)  In the Settlement Agreement, Defendant agreed to pay Plaintiff $35,078.40 in unpaid wages and liquidated damages and Plaintiff's counsel $24,731.00 in attorney's fees and costs.  (Settlement Agreement at ¶ 2.)  Defendant further agreed that "interest on any unpaid portion of the amount due . . . will begin to accrue daily at the New York State post-judgment interest rate of 9% on the thirty-first (31st) day after the Court's approval of the Settlement Agreement."  (*Id.* at ¶ 5.)  This Court approved the Settlement Agreement in an order dated January 14, 2022.  (ECF No. 23.)  In that order, this Court retained jurisdiction "until the Settlement Amount has been paid in full."  (*Id.*)  Defendant is yet to pay the Settlement Amount "in full."

As a result, Plaintiff now moves the Court to enforce the terms of the Settlement Agreement; in particular, Plaintiff argues the Settlement Agreement obligates Defendant to pay interest on the unpaid portion of the amount due at a 9% interest rate *compounding daily*.  To that

1

end, Plaintiff proposes this Court enter an order (ECF No. 33) that would entitle Plaintiff and Plaintiff's counsel collectively to more than five trillion (5,000,000,000) dollars as of the submission of moving papers (*see, e.g.,* Declaration of Irene Donna Thomas, Esq. in Support of Motion for Settlement Enforcement (ECF Nos. 32-3 & 32-4)) and more than six quintillion (6,000,000,000,000,000) dollars as of today.  Suffice it to say, Plaintiff's position—advanced without compunction by Plaintiff's counsel—is absurd by any objective standard.

For the following reasons, the Court (1) GRANTS in part and DENIES in part Plaintiff's motion to enforce the Settlement Agreement; (2) DENIES Plaintiff's motion for sanctions; and (3) DENIES Defendant's motion for sanctions.

## BACKGROUND

Plaintiff is a former traffic maintenance technician for the City of Mount Vernon.  Plaintiff filed the instant action on October 29, 2020 to recover unpaid wages, liquidated damages, and attorney's fees and costs under the Fair Labor Standards Act, 29 U.S.C. § 403.  (ECF No. 3.)  It is "undisputed" that Defendant failed to pay Plaintiff for work done on Defendant's behalf for the period starting March 9, 2020 and ending May 22, 2020.  (Settlement Agreement at 1.)

On December 27, 2021, the parties jointly moved this Court to approve the Settlement Agreement.  (ECF No. 22.)  The Settlement Agreement provides that Defendant "pay Plaintiff the total amount of $35,078.40 representing unpaid wages and liquidated damages" and "$24,731.00 for attorney's fees and costs."  (Settlement Agreement at ¶ 2.)  Defendant was obligated to make "payments under this Settlement Agreement" no later than thirty days after the Court's approval of the Agreement.  (Settlement Agreement at ¶ 5.)  The Court approved the Settlement Agreement by order on January 14, 2022 (ECF No. 23), and thus Defendant was obligated to pay the amount due under Paragraph 2 of the Agreement by February 13, 2022.  In the event Defendant did not pay the amount due under Paragraph 2 by February 13, the Settlement Agreement obligated

Defendant to pay "interest on any unpaid portion of the amount due under Paragraph 2," which would "accrue daily at the New York State post-judgment interest rate of 9% on the thirty-first (31st) day after the Court's approval of the Settlement Agreement," February 14, 2022. (Settlement Agreement at ¶ 5.)

Defendant did not make any payments under the Settlement Agreement by February 13, 2022.  On February 24, 2022, Plaintiff's counsel, Ms. Irene Donna Thomas ("Ms. Thomas") emailed Defendant's counsel, Mr. Anthony Odorisi ("Mr. Odorisi"), to inquire into "when the payments will be distributed."  (ECF No. 32-2 at 28.)  Ms. Thomas followed up by phone and email, and on March 16, 2022, she emailed Mr. Odorisi to inform him neither her nor Plaintiff had "received the payments as provided under the agreement." (*Id.* at 29.)  Ms. Thomas warned Mr. Odorisi that "if the Plaintiff (and his counsel) has not received his monies under the agreement by [March 23, 2022]," Plaintiff would "seek court enforcement of the agreement." (*Id.*)

Mr. Odorisi responded on March 21, 2022, updating Ms. Thomas that the "settlement vouchers" had "been submitted to the Comptroller's office for processing and payment." (*Id.* at 30.)  According to Mr. Odorisi, the Settlement Agreement was under review by the Defendant's Board of Estimate and Contract for approval and "sign-off." (*Id.*)  The Board planned to meet on March 29, 2022, and Defendant explained "checks will be cut once they approve." (*Id.*)

Ms. Thomas characterized Defendant's approval process as a "second approval" not contemplated by the Settlement Agreement. (*Id.* at 31.)  Ms. Thomas then requested Defendant pay the amount due no later than April 1, 2022. (*Id.*)  She added that Defendant's payment "should reflect the interest amount due under the settlement agreement." (*Id.*)  Should Defendant not comply with her request, she warned, Plaintiff would "seek the court's intervention" "to enforce the agreement." (*Id.*)  In an email sent to Ms. Thomas the next day, Mr. Odorisi reiterated that "[a]ll payments on settlement must be approved by the City's Board of Estimate." (*Id.* at 32.)  As

a result, he did not expect Plaintiff would receive payment by April 1.  (*Id.*)  Ms. Thomas was not convinced the Defendant needed "further approvals" because the Settlement Agreement did not "mention this contingency."  (*Id.* at 35.)  The approval process, and resulting delays, were thus "irrelevant" to Ms. Thomas.  (*Id.*)  Mr. Odorisi nonetheless informed Ms. Thomas on April 4, 2022 that he expected Defendant would receive final approval of the Settlement Agreement on April 19 and send out checks "shortly thereafter."  (*Id.* at 36.)

The next week, on April 6, 2022, Ms. Thomas filed a letter with this Court requesting a pre-motion conference regarding Plaintiff's motion to enforce the Settlement Agreement.  (ECF No. 24.)  This Court granted Plaintiff leave to file the instant motion.  (ECF No. 25.)  At no point in Ms. Thomas' letter to the Court did Ms. Thomas mention her belief Plaintiff was entitled to millions of dollars in interest payments.  Nor did Ms. Thomas' letter indicate to the Court that Plaintiff was including a motion for sanctions within the motion to enforce the Settlement Agreement.

In an email to Mr. Odorisi on April 11, 2022, Ms. Thomas disclosed (for the first time) Plaintiff's position that Defendant owed Plaintiff and Ms. Thomas millions of dollars in interest payments.  (ECF No. 32-2 at 37.)  Mr. Odorisi responded, "Those dollar figures quoted seem wildly off to me."  (*Id.* at 38.)  Ms. Thomas was unmoved; instead, she directed Mr. Odorisi to "[l]ook at the settlement agreement and calculate 9% interest daily as agreed by the parties."  (*Id.* at 39.)  Ms. Thomas also "ran the numbers through a software program," and she concluded that as of April 11, 2022, Defendant owed Plaintiff $4,374,452.05 and Ms. Thomas $3,084,079.48.  (*Id.* at 40.)  By the time Defendant approved the Settlement Agreement on April 19, Ms. Thomas warned, Defendant would owe Plaintiff $8,716,369.74 and Ms. Thomas $6,145,221.56.  (*Id.*)  In correspondence dated April 11 (*id.* at 41), April 20 (*id.* at 44), and May 9 (ECF No. 30-4), Mr. Odorisi and Defendant's counsel Mr. Brian Johnson ("Mr. Johnson") thrice alerted Ms. Thomas

that Plaintiff's means of calculating interest was incorrect.   Whereas Plaintiff interpreted Paragraph 5 of the Settlement Agreement to provide for interest compounding daily at a rate of 9% *per day*, Mr. Odorisi explained the "New York State post-judgment rate is 9 percent *per annum* and that 'interest accruing daily' reflects not that the interest compounds at 9 percent daily, but that the interest amounts incurred are added to the account balance every day." (ECF No. 30-4 at 1.)

Mr. Odorisi acknowledged, however, that Defendant "may" owe "some additional monies due to the number of days that passed since the date of court's signing of the settlement." (*Id.*)  To that end, Defendant was "happy to talk about how [the parties] can resolve those additional funds." (*Id.*)  Given Defendants' belief the "additional funds" "may be a couple of hundred dollars if that, not millions," Defendant threatened to withhold payment until a court ruling if Plaintiff filed a motion seeking millions in interest payments.  (*E.g.,* ECF No. 32-3 at 44.)

Ms. Thomas was unmoved.  She retorted that "[t]he only thing relevant is the parties' agreement," which she believed "clearly stated" Plaintiff was entitled to "9% interest." (*Id.* at 47.) Mr. Johnson warned Ms. Thomas that her position was "frivolous" and that Defendant might "be inclined to seek sanctions." (*Id.* at 46.)

Meanwhile, Defendant obtained approval of the Settlement Agreement and processed checks for delivery to Plaintiff.  (ECF No. 30-4.)  The checks included the amount due under Paragraph 2 of the Settlement Agreement, but they did not include in the amount calculated by either Plaintiff or Defendant.  In a letter to Ms. Thomas dated May 9, 2022, Mr. Odorisi explained that Defendant had processed the checks and was "prepared to mail" them that day. (*Id.*)  Mr. Odorisi, however, reiterated that if Plaintiff filed a motion "seeking payment for the interest [Plaintiff had] calculated," Defendant would "have no choice but to withhold payment until the motion is resolved." (*Id.*).

On May 11, 2022, Plaintiff filed the present motion seeking court enforcement of the Settlement Agreement and requesting the Court sanction Defendant.  (ECF No. 29.)

After receiving Plaintiff's memorandum of law in support of his motion, Mr. Odorisi again reached out to Ms. Thomas by letter dated May 16 to reiterate Defendant's prior offer:

> As set forth in our letter dated May 9, 2022, we are prepared to honor our understanding of the settlement agreement and provide you with the checks for the dollar amount set forth in that agreement.  The City does not intend to delay the release of the wages and liquidated damages owed to Plaintiff under that agreement. We propose that we release these checks to Plaintiff and table the issue of any additional amounts owed as interest until the Court resolves your pending motion. We cannot agree to make payment on any interest owed at this time, as there is a clear as to how that interest is to be calculated.

(ECF No. 30-6.)

Ms. Thomas responded the next day.   (ECF No. 30-7.)   She accused Defendant of "misrepresent[ing]" that the checks included "the interest to be paid under this litigation."  (*Id.*) As a result, Plaintiff decided to "wait until the Court has ruled on plaintiff's motion . . . before accepting the checks."  (*Id.*)

Mr. Odorisi then served upon Ms. Thomas a letter dated May 23, 2022 indicating Defendant's intent to file a motion for sanctions with this Court if Ms. Thomas did not withdraw Plaintiff's motions within twenty-one days.  (ECF No. 38-1.)  Defendant attached its draft memorandum of law in support of its threatened motion for sanctions.  The memorandum makes clear that Defendant considered the Plaintiff's motion "frivolous" because of Plaintiff's proposed interest calculation, which would entitle Plaintiff to over "$98 million in interest accrued because of the City's three-month delay in making payment on a $59,809.40 settlement agreement."  (*Id.* at 5.)  Ms. Thomas did not withdraw Plaintiff's motion within twenty-one days.

On August 25, 2022, Defendant filed the present motion seeking sanctions against Ms. Thomas.  (ECF No. 37.)

Three motions are presently before the Court: (1) Plaintiff's motion to enforce the Settlement Agreement; (2) Plaintiff's motion for sanctions against Defendant; and (3) Defendant's motion for sanctions against Ms. Thomas.  The Court addresses each in turn.

## DISCUSSION

### I.  Plaintiff's Motion to Enforce Settlement Agreement

An action to enforce a settlement agreement is "in essence, [a] breach of contract action[ ] governed by state law."  *Gomez v. Terri Vegetarian LLC*, No. 17-CV-213, 2021 WL 2349509, at *3 (S.D.N.Y. June 9, 2021) (quotation omitted).  "The primary objective [with respect to contract interpretation] is to give effect to the parties' intent as revealed in the language that they used."  *In re Musicland Holding Corp.*, 374 B.R. 113, 120 (Bankr. S.D.N.Y. 2007), *aff'd*, 386 B.R. 428 (S.D.N.Y. 2008), *aff'd*, 318 F. App'x 36 (2d Cir. 2009).  "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions."  *Matter of Pooling and Serv. Agmts.*, No. 17-CV-1998 (KPF), 2018 WL 1229702, at *6 (S.D.N.Y. Mar. 9, 2018).  Consequently, a threshold issue for any court is "whether the contract is ambiguous."  *Great Minds v. Fedex Off. and Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018) (quoting *Lockheed Martin Corp. v. Retail Holdings*, N.V., 639 F.3d 63 (2d Cir. 2011)).  Such a determination rests on a question of law.  *Id.* (citing *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152 (2d Cir. 2016)).  Ambiguity exists where a contract's "terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotations omitted).  "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation," *Hunt*

*Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989), unless each is a "reasonable" interpretation. *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992); *see, e.g., Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996) ("[N]o ambiguity exists where the alternative construction would be unreasonable.").   Thus, a court should not find the contract ambiguous where the interpretation urged by one party would "strain[ ] the contract language beyond its reasonable and ordinary meaning." *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459 (1957).

Where the parties dispute the meaning of particular contract clauses, the task of the court "is to determine whether such clauses are ambiguous when read in the context of the entire agreement." *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (internal quotation marks omitted). "[T]he presence or absence of ambiguity is determined by looking within the four corners of the document, without reference to extrinsic evidence." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 236 (2d Cir. 2008).

The Court need not turn to extrinsic evidence here.   The contractual language in Paragraph 5 of the Settlement Agreement is clear and unambiguous.   Regardless of the parties' litigating position, the language is capable of precise meaning to any reasonable person.   "Accrue" means to "accumulate"; just as a snowball accumulates new flakes when rolled in the snow, so too does a principal balance accumulate interest that is then added to the principal balance.   Take a simple example.   Bob opens a credit card account.   He spends $10 using the credit card.   The terms of the account dictate that his $100 balance accrues interest daily at a rate of .05% per day.   On day one, his unpaid balance would increase to $100.05, and on day two, .05% would be applied again to the original balance of $100, resulting in another $.05 of interest.   After twenty days, the balance will stand at $101, which is the sum of twenty days' worth of five-cent interest.   Put differently,

"accrue daily" means interest will be added onto the original balance in the amount of the original balance multiplied by (1) the daily interest rate and (2) number of days accrued.

Paragraph 5 provides the interest will "accrue daily" at the "New York State post-judgment interest rate of 9%." The New York post-judgment rate is provided by statute: 9% per annum. N.Y. C.P.L.R. ("CPLR") § 5004. It is also "well-settled" that New York's post-judgment rate does not contemplate compounding of interest. *Goett v. V1 Jets Int'l, Inc.*, No. 14-CV-8256 (BCM), 2021 WL 520421, at *5 (S.D.N.Y. Feb. 9, 2021) (citing *Washington v. Kellwood Co.*, No. 05-CV-10034 (SN), 2016 WL 845280, at *2 (S.D.N.Y. Mar. 4, 2016) (collecting New York cases)). Let's use Bob as an example again. Bob now opens a different credit card account. The terms of the account dictate that his $100 balance accrues interest daily at a rate of .05% per day, but this time the interest is compounded annually. At year one, his interest would total $18.25 (365 days * $0.05 interest accrued per day). Because the interest is compounded on an annual basis, at the start of year two, .05% would now be applied to a balance of $118.25. At the end of year two, Bob's year two interest would total $21.63 (365 days * ($118.25 * .05%)), which would be added on to the balance for a total of $140.13. New York's post-judgment rate, however, does not contemplate compound interest; instead, it is calculated as simple interest. Imagine if Bob's account did not compound on an annual basis. At the start of year two, Bob would have a $118.25 balance, but interest would still only accrue daily at a rate of .05% multiplied by the original balance of $100. Bob would incur the same $18.25 amount of interest in years one (365 days * $0.05 interest accrued per day), two, three, and so on.

Bringing these concepts together, the Settlement Agreement is clear on its face: interest will "accrue daily" at the New York post-judgment rate of 9% per annum, which is a simple interest rate. Plaintiff makes two critical errors. First, Plaintiff applies a compound interest rate that is not expressly provided by the Settlement Agreement or statute. In Ms. Thomas' calculations, each day

9

she applies the (incorrect) 9% daily interest rate to the original balance *plus the amount of interest accrued thus far*.  This compounding is impermissible; by expressly incorporating the New York post-judgment rate, the parties likewise agreed to the well-established principle that New York's post-judgment interest rate is a simple, not compound interest rate.  *See, e.g., Washington*, 2016 WL 845280, at *2 (collecting New York cases).  As a result, the applicable interest rate may only be applied against the original balance—not the original balance plus accrued interest.  Plaintiff's second error is that he suggests the words "accrue daily" transform a 9% per annum interest rate into a 9% daily interest rate.  But as discussed above, the period of accrual—which can be daily, monthly, yearly, or any other period—has no bearing on the size of the interest rate.  The period of accrual instead means the frequency with which the interest rate is applied to the principle, not the size of the interest rate itself.  To reach Plaintiff's conclusion, interest would need to *compound daily* at an interest rate of 9% *per day*.

Plaintiff's conclusion, however, far exceeds the outer limits of reasonableness.  Without compounding interest, Plaintiff's 9% daily interest rate is 365 times higher than the New York post-judgment rate.  That alone shocks the conscience.  *See Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988) ("An unconscionable contract has been defined as one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.") (internal quotations omitted).  With daily compounding, Plaintiff's 9% daily interest rate results in an effective annual rate of $4.58 \times 10^{15}$ %.  *Cf.* N.Y. Penal Law § 190.42 (McKinney) (setting criminal usury rate at 25% per annum).  Arising from a late settlement payment of tens of thousands of dollars, Defendant would

now owe quintillions of dollars in interest—enough money to make every human on earth a millionaire.[1] This Court need not say more.

Plaintiff's motion to enforce the Settlement Agreement is DENIED insofar as Plaintiff requests Defendant pay interest at a rate of 9% per day compounding daily. Plaintiff's motion to enforce the settlement is GRANTED insofar as Defendant is obligated to (1) make all payments due under Paragraph 2 of the Settlement Agreement and (2) pay interest pursuant to Paragraph 5 of the Settlement Agreement at a simple interest rate of 9% per annum, accruing daily from February 14, 2022 through the date of this Order.

## II.    Plaintiff's Motion for Sanctions

While not filed as a stand-alone motion or granted leave to do so by this Court, Plaintiff seeks sanctions. (ECF No. 28.) Plaintiff does so based on the Court's "inherent authority." (*Id.*) In particular, Plaintiff argues sanctions are necessary because of Defendant's "bad faith conduct of trying to extort the Plaintiff out of the interest money he is entitled to by threatening to delay the payment for his wages until such time as his motion to enforce the Settlement Agreement is resolved." (*Id.*)

It is well settled that courts possess certain "inherent powers," not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630 – 631 (1962). Among their vested authority is "the power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*,

---

[1] Under no hypothetical would Defendant approve such a settlement. Notwithstanding Plaintiff's assertions to the contrary (*see, e.g.*, Plf. Mem. Supp. Mot. (ECF No. 29 at 5–8)), Defendant's city charter requires that an agreement to settle "any claim against the City" be approved by the city's Board of Estimate and Contract. Charter § 152. Because "municipal contracts which violate express statutory provisions are invalid in New York," *Henry Modell & Co. v. City of New York*, 159 A.D.2d 354, 356 (N.Y. App. Div. 1st Dep't 1990) (further explaining that the requirements of city code "are not mere formalities or technicalities"), the Settlement Agreement (as interpreted by Plaintiff) would likely fail to garner city approval and thus remain unenforceable against Defendant.

6 Wheat. 204, 227, 5 L.Ed. 242 (1821)); *see also Ex parte Robinson*, 19 Wall. 505, 510 (1874).

Significantly, courts have the authority to impose sanctions for "bad faith conduct." *Chambers*,

501 U.S. at 46.  That authority includes "the ability to fashion an appropriate sanction for conduct

which abuses the judicial process.  *Id.* at 44–45; *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.

Ct. 1178, 1186 (2017).  When exercising their inherent authority to impose sanctions, courts should

use discretion to ensure the sanction is compensatory rather than punitive in nature.  *See Mine*

*Workers v. Bagwell*, 512 U.S. 821, 826 – 832 (1994).

This Court declines to exercise its inherent authority to sanction Defendant.  Although this

Court is disappointed Defendant did not timely pay Plaintiff, Defendant acted reasonably when

confronted with Plaintiff's request for several million dollars in interest payments.  Rather than

pay Plaintiff's exorbitant interest request, Defendant offered Plaintiff the payment due under

Paragraph 2 and withheld payment of Plaintiff's requested interest calculation—which Defendant

did not have approval to pay—until the Court resolved the present motion.  (*See, e.g.,* ECF No.

30-4.)  Given the choice between withholding payment and paying millions, trillions, if not

quintillions more than the settlement amount, Defendant made a reasonable decision.  Accordingly,

this Court DENIES Plaintiff's motion.

## III.    **Defendant's Motion for Sanctions**

Unlike Plaintiff, Defendant was granted leave to file a Rule 11 motion and did so on August

25, 2022, three months after serving a draft Rule 11 motion and memorandum of law in

correspondence to Ms. Thomas dated May 23, 2022.  Defendant brings this motion against Ms.

Thomas "because of a frivolous motion filed by her against the City in which she attempts to

collect over $98 million in interest accrued as a result of the City's three month delay in making

payment on a $59,809.40 settlement agreement."  (Def. Mem. Supp. Mot. (ECF No. 37-11 at 4.))

Generally, Rule 11 provides that every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name or by a party personally if the party is unrepresented.  Fed. R. Civ. P 11(a).  By presenting to the court a pleading, written motion, or other paper, an attorney, or party, attests that to the best of the person's knowledge, information, and belief that (1) the document it is presenting is for a proper purpose, and not to harass, cause unnecessary delay, or purposefully increase the cost of litigation; (2) the claim(s), defense(s), and legal contentions being presented are justified by prevailing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.  Fed. R. Civ. P. 11(b).  "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11 has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed R. Civ. P. 11 (c)(1).

Typically, sanctions should be imposed only in "extraordinary circumstances."  *Graves v. Deutsche Bank Sec, Inc.*, No. 07-CV-5471(BSJ), 2010 WL 997178, at *7 (S.D.N.Y. Mar. 18, 2010) (internal quotation marks omitted).  The court's authority to levy sanctions is limited to what is "sufficient to deter repetition of such conduct."  *See Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) (internal citations omitted).  Liability under Rule 11 for the imposition of sanction requires a showing of "objective unreasonableness on the part of the attorney or client signing the papers."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997)). Pleadings violate Rule 11 if they are determined to be frivolous, legally unreasonable, or factually

without foundation, even if they are not signed in bad faith. *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002). Likewise, the imposition of sanction has been deemed appropriate upon a showing that the allegation was utterly lacking in support. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003).

The imposition of sanctions is collateral to and independent from the underlying case such that the district court has jurisdiction to impose sanctions, if warranted, irrespective of the status of the underlying claims or case. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 137–39, (1992); *Chemiakin v. Yefimov*, 932 F.2d 124, 127 (2d Cir. 1991). Whether to grant sanctions under Rule 11 should be "made with restraint." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999). The decision to impose sanctions is not mandatory, but rather is a matter for the court's discretion, such that the Court need not impose sanctions even when there has been a judicial determination that Rule 11 has been violated. *See* Fed. R. Civ. P. 11(c) (allowing the court to "impose an appropriate sanction...."); *see also Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).

Rule 11(c)(2), commonly referred to as the safe harbor provision, provides in relevant part:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

This provision allows the target of a sanctions motion "the opportunity to withdraw the potentially offending statements [or claim] before the sanctions motion is officially filed." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003). The safe harbor provision is a strict procedural requirement. *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (citing *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 n.4

14

(2d Cir. 2002)); *Badges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327–29 (2d Cir. 1995).   A movant's failure to comply with the procedural requisites will result in the denial of the motion. *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 341 (S.D.N.Y. 2006).

At the outset, this Court finds Defendant complied with the procedural requirements of Rule 11.   On May 23, 2022, Defendant served Ms. Thomas with a draft Rule 11 motion and memorandum of law.   (ECF No. 38-1.)   The served papers indicated the basis for Defendant's motion—namely Ms. Thomas' frivolous position that Plaintiff was entitled to interest at a 9% daily interest rate compounding daily—and informed Ms. Thomas she had twenty-one days to withdraw Plaintiff's motion for settlement enforcement and sanctions.   Ms. Thomas did not withdraw her motion, instead doubling down on her erroneous position and filing her own request to impose sanctions upon Defendant.   (ECF No. 39.)   Ms. Thomas had sufficient "opportunity to withdraw" the motion yet chose not to.   *See Storey*, 347 F.3d at 389.

Turning to the substance of Defendant's motion, this Court notes that Ms. Thomas had an obligation under Rule 11 to "stop-and-think" before filing her motion*, see Kagan v. Sands Bros. & Co.*, No. 05 CIV. 8889 (PAC), 2006 WL 8461814, at *1 (S.D.N.Y. Jan. 12, 2006), especially where she was alerted numerous times to the faulty premises underlying her position and the preposterous results that would follow from adopting her argument.   Far from zealous advocacy, Ms. Thomas engaged in "uninformed motion practice."   Regardless of whether Ms. Thomas "personally was unaware of the groundless nature of an argument or claim ... Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a [brief] before it is signed." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985).

Even if this Court assumes best intent—and it does—Ms. Thomas advanced an argument that was groundless under any objective standard: no reasonable person would agree Plaintiff was

entitled to millions of dollars (or more) in interest payments for a settlement worth tens of thousands of dollars. If Ms. Thomas believed her argument was correct—and based on the filings, there is no indication she wavered in that belief—she still had a responsibility to "make the minimal amount of inquiry" before presenting her argument before the Court. *Fischer v. Samuel Montagu, Inc.*, 125 F.R.D. 391, 395 (S.D.N.Y. 1989) (imposing sanctions on party for interposing groundless motion even though Rule 11 does not require "scholarly exposition or exhaustive research"). Tellingly, Ms. Thomas cites no caselaw—nor will she find any—to support such an exorbitant request.

Ms. Thomas had several opportunities to further examine her position before bringing it to the Court. At minimum, her correspondence with opposing counsel provided her enough notice to "stop," "think," and conduct research to probe her position. *See Kagan,* 2006 WL 8461814, at *1. Even if a cursory review of basic financial terminology or well-established caselaw did not move her, the sheer amount of interest requested should have alerted her to the lack of merit in her position. For example, Ms. Thomas attaches to her declaration to the Court a calculation of interest through June 28, 2022. The calculation estimates that as of June 28, 2022, Defendant owed Plaintiff and Ms. Thomas over $3.6 trillion and $2.5 trillion, respectively. (ECF Nos. 32-3 & 32-4.) As of today, Defendant owes Plaintiff and Ms. Thomas each quintillions of dollars. This Court acknowledges that Plaintiff is a sympathetic party who has long been denied wages owed to him by Defendant. But Ms. Thomas' advocacy on Plaintiff's behalf here precluded her better judgment. Advancing an argument that would counsel the award of quintillions of dollars is unreasonable. Her argument wastes the time and resources of Defendant and this Court. Worst of all, it impairs the interests of her client, who otherwise would have collected his award seven months ago.

Although Plaintiff's argument regarding the calculation of interest is baseless, this Court acknowledges that the portion of the motion seeking Defendant's *timely* payment of the amount due is meritorious.  Defendant failed to timely pay Plaintiff, and Plaintiff did not act unreasonably in moving this Court to ensure Defendant's compliance.  Accordingly, this Court exercises its discretion under Rule 11 and refuses to impose sanctions against Ms. Thomas.  *See, e.g., Perez v. Posse Comitatus*, 373 F.3d 321, 325–26 (2d Cir. 2004) (acknowledging a court's discretion to fashion or forgo sanctions).  Defendant's motion for sanctions is denied.

## CONCLUSION

In conclusion, Plaintiff's motion to enforce the Settlement Agreement is GRANTED in part and DENIED in part.  Plaintiff's motion is GRANTED insofar as Defendant is obligated to (1) make all payments due under Paragraph 2 of the Settlement Agreement and (2) pay interest pursuant to Paragraph 5 of the Settlement Agreement at a simple interest rate of 9% per annum, accruing daily from February 14, 2022 through the date of this Order.  The Court directs Defendant to make all payments under the Settlement Agreement no later than thirty (30) days after the date of this Order.  Plaintiff's motion to enforce the Settlement Agreement is DENIED in all other respects, including insofar as Plaintiff requests Defendant pay interest at a rate of 9% per day compounding daily.  Plaintiff's motion for sanctions is DENIED.  Defendant's motion for sanctions is DENIED.

The Clerk of Court is kindly directed to terminate the motions at ECF Nos. 28 and 37.

SO ORDERED:

Dated:    December 8, 2022
          White Plains, New York

_____
        NELSON S. ROMÁN
     United States District Judge